```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         NASHVILLE DIVISION
```

AETNA LIFE INSURANCE COMPANY,  )
                               )
        Plaintiff,              )
                               )
    v.                          )      Case No. 3:06-0126
                               )      Judge Echols
LORI ANN BELL, and ARCHIE E.    )
BELL and LAURIE MAE BELL,       )
                               )
        Defendants.             )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On April 10, 2007, this Court held a bench trial in this interpleader action relating to the Defendants' dispute over entitlement to the proceeds of a group life insurance policy underwritten by Plaintiff Aetna Life Insurance ("Aetna"). Based upon the testimony presented, the exhibits received, and the record in this case, the Court hereby enters its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### I.  FINDINGS OF FACT

1.  David Owen Bell ("David"), the insured under a general life insurance policy issued by Aetna in the amount of $50,000, was married to Defendant and Cross-Plaintiff Lori Ann Bell ("Lori"). Together, they had two children, Erin Elizabeth Bell ("Erin") and EJB, who is presently a minor.

1

2. On June 17, 1994, David and Lori were divorced after approximately nine years of marriage on the ground of irreconcilable differences. The divorce was amicable.

3. As a part of the divorce proceedings, David and Lori entered into a Marital Dissolution Agreement, which was incorporated into and made a part of the Final Decree by the Court.

4. The Marital Dissolution Agreement was drafted by Lori's counsel, Mark Walker, Esq. ("Walker"). Walker is a distant relative of Lori.

5. David was not represented by counsel in the divorce proceedings and did not have any role in drafting the Marital Dissolution Agreement. In fact, Walker never spoke to David about the matter of life insurance and most of the information Walker used in drafting the Marital Dissolution Agreement came from Lori.

6. The Marital Dissolution Agreement provided, among other things, that "[t]he father [David] shall make the minor children beneficiaries on his insurance policy." (Final Decree ¶ 14). Walker testified that the intent of the parties was that David was to provide life insurance coverage to the two children of the marriage and that the obligation to provide life insurance remained, even after the children reached the age of majority.

7. At the time of the divorce, David and Lori worked for Whirlpool Corporation.

8. Lori testified that she and David each had a group life insurance policy from Whirlpool in the amount of $50,000, which just happens to be the same amount of group life insurance at issue in this action. Lori claims that $50,000 was the base amount of life insurance which was provided to all Whirlpool employees at the time free of charge. The group policy was terminated when an employee stopped working for Whirlpool. No other evidence has been presented about the Whirlpool policies or their amounts. Neither David or Lori had any other life insurance.

9. Lori claims that she and David both agreed that they would name the children as the beneficiaries of their respective Whirlpool policies.

10. Within several months of the divorce, David left his employment at Whirlpool. Lori testified she and David had agreed during the divorce proceedings that David would leave Whirlpool after the divorce was final because it would be awkward for both of them to continue to work there.

11. After leaving Whirlpool, David held numerous and assorted jobs at various businesses for different lengths of time over the next few years, including working at Pearl Drum, Jostens, Eileen Industries, Gary Forcum and Corner Music. Lori does not know and the record does not reflect whether David had any life insurance during any of this period of time.

3

12.  In 2001, David became employed with the Board of Education for the Metropolitan Government of Nashville and Davidson County ("Metropolitan Government").  As a part of his employment benefits with Metropolitan Government, David was entitled to life insurance through a Group Life Insurance Policy ("the Policy") issued by Aetna to Metropolitan Government, which provided life insurance coverage to Metro employees in the amount of $50,000.

13.  On June 6, 2001, David completed a New Hire Enrollment Form for life insurance coverage under the Policy in the amount of $50,000, and he designated his father, Defendant Archie E. Bell ("Archie"), as the Primary Beneficiary of the Policy and his mother, Laura M. Bell ("Laura Mae"), as the Secondary Beneficiary.

14.  Lori claims that she was unaware of this designation on his new life insurance policy.  Lori also claims that David repeatedly assured her in the years after the divorce that she did not have to worry as "the children would be taken care of" after his death.  Because of those assurances, she never pursued the matter of life insurance, although on at least two occasions she went to court to force David to pay the required child support and his share of the dental expenses for the children which were not covered by her insurance.

15.  David remarried and from that marriage he had one son named Hayden, who is presently twelve years old.

4

16. On November 12, 2005, David died. At the time of his death, David was an insured under the Policy issued by Aetna in the amount of $50,000.

17. After David's death, Lori filed a Complaint in the Chancery Court for Davidson County against Aetna and her former mother and father in-law, Archie and Laura Mae, claiming entitlement to the proceeds of David's life insurance policy at Metropolitan Government. Lori later voluntarily dismissed that state court action in favor of Aetna filing a Complaint for Interpleader in this Court.

18. After Aetna filed its Complaint, it deposited the sum of $50,663.40, representing the life insurance proceeds at issue in this case plus accrued interest through the date of deposit on July 7, 2006 (Docket Entry No. 27). The Clerk was then directed to pay those funds into an interest bearing account (Docket Entry No. 31).

19. At the time this suit was filed, the children of David and Lori were minors. However, since the filing of this suit, Elizabeth attained the age of majority and she was added as a party to this action on March 16, 2007 (Docket Entry No. 55).

20. Pursuant to an Agreed Order of Dismissal, Aetna was dismissed from this action (Docket Entry No. 61).

### III. CONCLUSIONS OF LAW

"A Marital Dissolution Agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings and is to be construed as other contracts as to its meaning and effect." Flowers v. Flowers, 2007 WL 412302 at *7 (Tenn. Ct. App. 2007). "Upon incorporation of the property settlement agreement into a divorce decree, it becomes the judgment of the court" and is "to be construed like any other written instrument." Id.

The rules underlying construction of a contract are well-known. The Tennessee Supreme Court recently reviewed the principles governing the construction of contracts as follows:

> A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002). Th[e] Court's initial task . . . is to determine whether the language is ambiguous. Id. at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. Id. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. Id.
> Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975)[.]
> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. Planters Gin Co., 78 S.W.3d at 890. An ambiguous provision in a contract generally will be construed against the party drafting it. Hanover Ins. Co. v. Haney, 221 Tenn. 148, 425 S.W.2d

6

590, 592 (1968); Vargo v. Lincoln Brass Works, Inc., 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003). Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. See, Memphis Housing Auth. v. Thompson, 38 S.W.3d 504, 512 (Tenn.2001).

Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611-12 (Tenn. 2006).

Applying these rules to the facts of this case, the Court determines that the reference to the father making the children beneficiaries on his insurance policy could only mean a policy David had at the time of the divorce. The phrase "[t]he father [David] shall make the minor children beneficiaries on his insurance policy" suggests the presence of a then-existing policy and does not evidence any intention that policies acquired in the future name the children as beneficiaries.

Insofar as the foregoing language may be viewed as being ambiguous, this does not help Lori and her children in their quest to receive the benefits of the Aetna policy. Ambiguous contracts are to be construed against the party responsible for drafting the document. In this case, the document was drafted by Lori's counsel, without any input from David or even information from him about the existence of a life insurance policy. Construed against Lori, the agreement could not possibly be said to encompass a policy which was acquired some seven years after the divorce.

The credible parole evidence which has been presented does not change the Court's conclusion. While Lori testified about her

7

understanding regarding the parties' intent and David's alleged and repeated statements that "the girls would be taken care of" upon his death, there is obviously no evidence from David about the parties' intent or what "his insurance policy" was in reference to.

Moreover, the Court finds Lori's testimony to be self-serving and not entirely credible. Lori testified that the Whirlpool policy was for $50,000 which (seemingly not coincidentally) just happens to be the amount at issue in this case. While Lori testified she was repeatedly assured by David that "the girls would be taken care of," she never bothered to receive verification from David that his children were the beneficiaries of any life insurance policy during the eleven year period between the time he left Whirlpool and the time of his death. She knew his former life insurance policy with Whirlpool had been cancelled, but she did not inquire or receive verification of any life insurance policy, even though she knew David had remarried and worked many different jobs after leaving Whirlpool. Even when she filed complaints against David in divorce court on at least two occasions during this time period because of his alleged failure to keep current on his child support payments and his failure to pay his part of dental fees for the children which were not covered by her dental insurance, she did not mention or charge that David had violated the court's order to maintain life insurance on his life for the benefit of the children.

8

Lori's testimony that she and David agreed David would leave his employment with Whirlpool after the divorce because of the awkwardness or embarrassment that would result in having to work together at the plant is also somewhat suspect. While Lori maintains this agreement supports her contention that the Marital Dissolution Agreement required David to provide life insurance benefits for the children on his future life insurance policies, the opposite is just as plausible. If in fact David and Lori had agreed that David would leave Whirlpool shortly after the divorce, this would provide much incentive for Lori to make sure that the life insurance requirement under the Marital Dissolution Agreement was obtained in a certain amount for the benefit of his daughters at his future employment or on his own.

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles." Gray v. Estate of Charles Henry Gray, 993 S.W.2d 59, 64 (Tenn. Ct. App. 1998)(citation omitted). "In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust." Id. In this case there has been no showing of fraud or mistake and, while it may appear harsh, the Court has little choice but to conclude, based upon the Marital Dissolution Agreement and Final Decree, that the insurance policy at issue was that in

9

existence at the time of the divorce, and there was no specific requirement for David to obtain a substitute or replacement policy in any particular amount in the future if the existing policy was cancelled.

In reaching the foregoing conclusion, the Court is fully aware of Holt v. Holt, 995 S.W.2d 68 (Tenn. 1999) which Lori claims to be dispositive. This Court rejected that reliance when it ruled on the previously filed cross-motions for summary judgment and the evidence at trial confirms that reliance on Holt is misplaced.

In Holt, the Tennessee Supreme Court was presented with a situation in which a divorce decree required the decedent to obtain a $100,000 life insurance policy naming his child as beneficiary and his former wife as trustee. In fact, the Marital Dissolution Agreement included a lengthy discussion about life insurance and specifically provided that "the Husband shall maintain and keep in full force and effect a life insurance policy in the amount of one hundred thousand dollars ($100,000) to secure his obligations for the payment of child support and other debts as set out in this Agreement." Id. at 69. When the decedent died, he owned a $40,000 insurance policy naming his child as beneficiary, and a $50,000 policy naming his mother as beneficiary. Based on these facts, the issue presented to the Tennessee Supreme Court was whether the proceeds of the $50,000 policy should be paid to the former wife as trustee for the benefit of the child.

10

After surveying cases from other jurisdictions and prior appellate decisions in Tennessee, the Tennessee Supreme Court held that a constructive trust in favor of the former wife was appropriate in light of the fact that it was "undisputed that the Decedent breached his obligation under the final divorce decree to maintain a $100,000 life insurance policy listing [his former wife] as trustee and [his child] as the beneficiary." Id. at 71. "After carefully considering principles of law as well as principles of equity," the Tennessee Supreme Court "conclude[d] that no significant difference exists between circumstances in which an identifiable life insurance policy existed at the time of the divorce" and a situation where the language of the divorce decree required that a certain individual be named "the sole and irrevocable beneficiary" and where "the clear language of the divorce decree contemplate[d] a continuous obligation in which [the child] should be provided for in the event of the Decedent's death." Id. at 77.

The facts in this case are markedly different from those presented in Holt. In this case, the Final Decree merely provided that "the father shall make the minor children beneficiaries on his insurance policy." The designation is for the children to be named beneficiaries, and, unlike Holt, does not indicate the former wife should be designated the trustee. Moreover, the language of the Final Decree in relation to insurance is very vague; it does not

11

identify a policy, the type of insurance, or the amount of the insurance. In fact, and as previously noted, the language on its face appears to be referencing an already existing policy and, unlike Holt, does not require that the decedent maintain life insurance in any given amount. Also, the language does not specify whether David would have to name the minor children on all future life insurance policies, whether his obligation was limited to a certain amount of insurance, or whether the insurance is reduced when one of the girls reaches her majority.

Further, the previous concern expressed by the Court in ruling on the cross motions for summary judgment remains. Taken to its logical extreme, Lori's argument suggests that a constructive trust would be required on every life insurance policy purchased by David after his divorce, regardless of the children's age. However, the Final Decree imposes no such requirement. Unlike the situation in Holt, there is no indication as to the amount of a policy, let alone that a certain amount of insurance benefits had to be maintained continuously.

The Court recognizes that "the public policy of this state strongly favors the enforcement of court orders, particularly when the welfare of children is involved." Holt, 995 S.W.2d at 77. However, the Final Decree simply cannot be read as encompassing the Aetna insurance policy in this case. Accordingly, the Court will not impose a constructive trust in favor of Lori in relation to the

12

Aetna policy. In doing so, the Court notes that the grandparents, Defendant Archie and Laurie Bell, have indicated through counsel that it is their intention to take the proceeds of the Aetna policy and use it for the benefit of all three of David's children and the Court hopes that they follow through on that expressed intention.

The Court concludes that Lori Bell and her children are not entitled to the proceeds of the Aetna Policy, or even a portion of that Policy. Accordingly, judgment will be entered in favor of Archie E. Bell and Laurie Mae Bell and against Lori Ann Bell and Erin Elizabeth Bell, and the Clerk will be directed to pay the proceeds which have been deposited with the Court to Archie E. Bell and Laurie May Bell.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

13

Case 3:06-cv-00126   Document 62   Filed 05/21/07   Page 13 of 13 PageID #: 370